UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

IN RE: MILFORD HOUSING LLC,

        Debtor.

MILFORD HOUSING LLC,

        Plaintiff,                              Case No. 15-cv-11119

v.                                                  Honorable Thomas L. Ludington

VILLAGE OF MILFORD,

        Defendant,

_____/

**ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, GRANTING JUDGMENT FOR DEFENDANT, AND DISMISSING PLAINTIFF'S COMPLAINT**

On July 22, 2011, Plaintiff Milford Housing LLC filed a complaint against Defendant Village of Milford asserting due process and inverse condemnation claims in an adversary proceeding before Bankruptcy Judge Daniel S. Opperman. The dispute between the parties arises out of the condemnation and destruction of an apartment building owned by Plaintiff. After a bench trial was held, the parties submitted briefs and proposed findings of fact and conclusions of law. On March 26, 2015, Judge Opperman filed a report recommending that judgment be granted for Defendant and that Plaintiff's complaint be dismissed. ECF No. 1. On April 8, 2015, Plaintiff filed objections to Judge Opperman's report and recommendation. ECF No. 3. Although Federal Rule of Bankruptcy Procedure 9033(b) and Eastern District of Michigan Local Rule 5.1.1(a) put the burden on Plaintiff to obtain and file transcripts of the bench trial on this docket, the transcripts were not filed until January 5, 2017. On January 19, 2017, Defendants filed a response to Plaintiff's objections. ECF No. 7. For the reasons stated below, Plaintiff's objections

will be overruled, the report and recommendation will be adopted, and judgment will be entered for Defendant.

**I.**

Judge Opperman has issued proposed findings of fact. *See* Rep. & Rec. at 2–6, ECF No. 1. In its objections, Plaintiff provides a copy of the proposed findings of fact it submitted after the bench trial. Objs. at 2–8. That reiteration of arguments previously made is not a sufficiently "specific" objection to trigger de novo review pursuant to Bankruptcy Rule 9033(d). Plaintiff also provides several specific objections to Judge Opperman's findings of fact. *Id.* at 9–10. Those objections take issue with Judge Opperman's credibility determinations and refusal to draw certain inferences in favor of Plaintiff. Plaintiff's objections do not specifically identify portions of Judge Opperman's proposed findings of fact where he ignored important facts, misconstrued testimony, or otherwise made objectively incorrect statements. Because the objections challenge only Judge Opperman's treatment of subjective issues of fact, Judge Opperman's findings of fact will be summarized below. Afterwards, Plaintiff's objections to particular aspects of those findings of fact will be addressed.

**A.**

The property at issue was purchased by Plaintiff in June of 2000. The property included a 24-unit apartment building and five acres of land. Subsequent to Plaintiff's purchase of the property, the apartment building repeatedly experienced problems related to the boiler heating system, which resulted in burst pipes and collapsed ceilings. In January 2003, cold weather caused several water pipes to burst, saturating the ceiling and causing collapse in areas. Randall Sapelak, the Building Official for Defendant, inspected the building and concluded that it was not a "dangerous building" as defined by the relevant local ordinance. At the time, there was no

full-time, live-in building manager even though that was required by the building's special use permit. Trial Tr. I at 95–96. The pipes and ceilings were repaired. Similar incidents occurred in March 2008 and December 2008. After the March 2008 incident, an official with the Michigan Department of Labor and Economic Growth opined that the structure should be designated as "a dangerous and unsafe building." Trial Tr. I at 33, ECF No. 5. At the time, Mr. Sapelak did not agree. However, when Mr. Sapelak discovered that the ceiling collapses were occurring again in December 2008, he decided that further action needed to be taken.

On December 30, 2008, Mr. Sapelak sent a letter to the attorney for the Village of Milford in which he indicated his desire to "'close the place down or, if that can't happen, have the building totally vacated until all repairs are completed.'" Rep. & Rec. at 2. Mr. Sapelak expressed his belief that "'[t]he problem with having it closed only temporarily is that the problems will repeat themselves as long as the building is owned by the same person that has it now.'" *Id.* He also summarized the known problems with the building:

> To date, I know the roof needs complete replacement and probably some of the roof sheathing will have to be removed. Some of the trusses may be compromised due to water damage. Some ceilings and walls are missing drywall and heat in some of the unoccupied units. Mold is in some of the ceilings. Some of the brick outside has pulled away from the walls and is open to the weather. A lot of external flashing needs repair. I am not certain about the safety of any of the interior mechanical systems.

*Id.* at 3.

Three weeks later, Mr. Sapelak prepared another letter wherein he updated his opinions about the building's condition. He stated that the building was "'in immediate need of repair'" and needed to be vacated while being repaired. *Id.* He identified the following issues: "foundation sagging in both the east and south wings, causing sinkage and leaving open air visible from some apartments; varied and insufficient heating; water damage; and the roof being

in need of immediate repair." *Id.* Mr. Sapelak believed that at least the two sagging wings would need to be demolished (if not the entire building). He also recommended that: "'if it is restored that it is inspected monthly . . . due to the current owner[']s history, while charging the owner for the time involved." *Id.*

During the bench trial, Mr. Sapelak testified that by January 22, 2009, he had concluded:

> [T]his owner will not take care of this building. That he's not interested in taking care of this building. My opinion was he didn't care who you rented to. He didn't care what kind of conditions whoever he rented to lived in. He didn't care whether or not it was safe enough for them to live in.

Trial Tr. I at 119.

In a memo Mr. Sapelak wrote on January 26, 2009, he recommended that:

> Anything we can do to condemn the entire building until the entire building is brought up to code and site plan compliance by providing a live-in manager before even one unit is reoccupied will be the best solution. Until that time I would like to see the place vacated entirely (all units) and to forbid any advertising of any rent space until that happens.

Rep & Rec. at 3.

Mr. Sapelak then sent a letter to Plaintiff which listed the conditions with the building, informed Plaintiff that it was a dangerous building as defined by the ordinance, and ordered that the building be demolished. *Id.* at 3–4. The letter explained that a dangerous building hearing would be held and that the Plaintiff would have the opportunity to explain why the building should not be demolished.

The hearing was held by building hearing officer Timothy Brandt. Plaintiff argued at the hearing that it should be given the opportunity to repair the building. Plaintiff estimated that repairs would cost $125,000 and testified that it had assets which could be leveraged to pay for the repairs.

Mr. Brandt concluded that the structure was a dangerous building under the ordinance and that it should be demolished by May 1, 2009. Plaintiff appealed that decision to the Village of Milford Counsel.

> Mr. Sapelak prepared a letter which was presented at the appeal hearing and stated:
>
> Due to all of the problems associated with this site I can only see this situation getting worse as time progresses. Even though the owner seems to express that doing some work with change the situation . . . I have no confidence that this building will ever be a fit place to live for anyone.

*Id.* at 4.

At the appeal hearing, Plaintiff again requested that it be allowed to repair the building. Plaintiff also asserted that, because the tenants had vacated the building, there was no danger in giving Plaintiff an opportunity to make repairs. The Village Counsel affirmed Mr. Brandt's decision and ordered that the building be demolished.

After the hearing, Plaintiff ceased making mortgage payments on the building and the mortgage provider eventually commenced foreclosure proceedings. The foreclosure sale took place on December 28, 2010. The same day, Plaintiff filed the Chapter 7 bankruptcy petition. This report and recommendation originated from a related adversary proceeding. On November 11, 2011, the parties agreed to lift the automatic stay to allow demolition of the building.

**B.**

Most of Plaintiff's factual objections simply fault Judge Opperman for not agreeing with certain conclusory statements in Plaintiff's proposed findings of fact. *See* Objs. at 9–10. But the gravamen of Plaintiff's contentions can be found in the following paragraph:

> This was a building that had been successfully repaired in the past. This was a building that was never, until February, 2009, considered a dangerous building. The building official was of the opinion at all times that the building could be

> repaired. The building official concluded, as a basis of the order to demolish the building that Plaintiff would not take care of the building in the future, that the Plaintiff wasn't interested in taking care of the building, that Plaintiff's didn't care if the building was safe. The building official testified that it was his intention to have the building demolished because, based upon Plaintiff's history, that the building wouldn't be repaired [sic]. The mortgage lender testified at the trial the measures taken by the building official were drastic in light of the fact that the mortgage lender was willing to contribute to the repair costs, and were caused by the building inspector's dislike of the Plaintiff's representative, Rodney Sabourin.

Objs. at 9.

Upon review of the record and Judge Opperman's proposed findings of fact, the Court believes that all of this testimony was represented in Judge Opperman's findings of fact. As discussed above, Plaintiff's objections, properly construed, are focusing on the weight Judge Opperman gave to certain evidence. But Plaintiff has provided no nonconclusory explanations of why Judge Opperman should have viewed the evidence differently.

Plaintiff repeatedly asserts that Mr. Sapelak admitted during the bench trial that the building could have been repaired. While testifying, Mr. Sapelak did concede that any building could conceivably be repaired. *See* Trial Tr. I at 52 ("[Q:] You believe though that the building could be repaired, correct? [A:] Any building can be repaired. . . . The World Trade Center could be rebuilt."). What Plaintiff misapprehends, however, is that just because it is possible to repair a building does not necessarily mean that a municipality is required to accommodate a request to do so, especially when the owner's past practices evince a history of inadequate repairs. Plaintiff argues that Defendant should not have based its decision to demolish the building on a "prognostication of what may happen in the future," but provides no explanation of why Defendant could not reasonably extrapolate Plaintiff's past practices into a high likelihood of future violations.

Plaintiff also argues that Judge Opperman erred in not concluding that Defendant was "seeking to punish the Plaintiff for his perception of the record of Plaintiff's maintenance of the building." Objs. at 10. Plaintiff emphasizes that it had never been formally cited for violation of building ordinances and had twice successfully completed repairs of similar conditions. As discussed below, Plaintiff has presented no evidence of animus on the part of Mr. Sapelak, much less the other officials involved in the decision to demolish the building.[1] The record reveals that Mr. Sapelak had been dealing with deficient conditions in the building for over five years and had concluded that the owner had no intention of comprehensively addressing the underlying structural problems in the building. Judge Opperman found Mr. Sapelak's and Mr. Brandt's testimony to be "particularly credible" and this Court agrees.

Plaintiff makes other purported objections to Judge Opperman's proposed findings of fact, but all those objections are derivative of Plaintiff's objections to Judge Opperman's conclusions of law. Accordingly, Plaintiff's objections that it should have been allowed to repair the building because there was no ongoing danger to the community and that Defendant's decision to the contrary was arbitrary and capricious will be addressed below.

**II.**

Bankruptcy Rule 9033 provides the standard of review for proposed findings of fact and conclusions of law submitted by bankruptcy judges.[2] Pursuant to that rule:

---

[1] Plaintiff's primary evidence in support of its theory that Mr. Sapelak arbitrarily disliked Plaintiff's agent, Mr. Sabourin, was the testimony of Mr. Cini, the President of the company who held the mortgage on the building. At trial, Mr. Cini testified that "it seemed like the city was - - didn't like Rod [Sabourin] for some reason. They had some bad experiences with him." Trial Tr. II at 32, ECF No. 6. Given the history between Mr. Sapelak and Plaintiff, Mr. Sapelak's negative impressions of Plaintiff's treatment of the building were neither unreasonable nor arbitrary. More importantly, Mr. Brandt independently ordered that the building be demolished. Plaintiff has presented no evidence that Mr. Brandt had animus towards Plaintiff.

[2] A bankruptcy judge has authority to make final decisions on "core proceedings," which are proceedings that invoke "a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Waldman v. Stone*, 698 F.3d 910, 922 (6th Cir. 2012) (internal citations omitted). If claims are merely related to the bankruptcy estate, they are non-core proceedings and the bankruptcy court has authority only to submit

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Bankruptcy Rule 9033.

Objections trigger de novo review only if they are specific. 28 U.S.C. § 157(c). *See also In re Carrico*, 214 B.R. 842, 845 (B.A.P. 6th Cir. 1997); *Messer v. Peykar Int'l Co.*, 510 B.R. 31, 39 (S.D.N.Y. 2014). District judges review reports and recommendations from bankruptcy courts in much the same way that reports and recommendations from magistrate judges are considered. *See Hagan v. Okony*, No. 1:08-CV-732, 2008 WL 4722747, at *1 (W.D. Mich. Oct. 22, 2008); *In re Lawrence*, 164 B.R. 73, 75 n.4 (W.D. Mich. 1993).

### III.

In the adversary proceeding, Plaintiff asserts that Defendant's actions violated its substantive due process rights and constituted adverse condemnation. Judge Opperman recommends dismissal of both counts and Plaintiff has objected to his reasoning. Plaintiff's two claims will be reviewed, de novo, in turn.

### A.

Judge Opperman's rejection of Plaintiff's substantive due process claim relies heavily upon *Bonner v. City of Brighton*, 495 Mich. 209 (2014). In *Bonner*, structures on two residential properties were deemed unsafe. *Id.* at 214. The relevant ordinance authorized the municipality to demolish unsafe buildings without providing an opportunity to repair if "'the cost of the repairs would exceed 100 percent of the true cash value of the structure.'" *Id.* at 216. Pursuant to that provision, the building inspector ordered that the structures be demolished without providing the

---

proposed findings of fact and conclusions of law. *Id.* Plaintiff's due process and inverse condemnation claims constitute non-core proceedings.

owners an opportunity to repair them. After unsuccessfully appealing the decision of the building inspector to the city council, the owners of the property filed suit alleging that the demolition order violated substantive and procedural due process. *Id.* at 218. Judge Opperman quoted the following portions of the Michigan Supreme Court's decision in *Bonner*:

> [W]e are unaware of any court that has ever granted a property owner the fundamental right of an absolute repair option involving property that has fallen into such disrepair as to create a risk to the health and safety of the public. Indeed, that conclusion would hardly be compatible with the line of cases in which this Court and the United States Supreme Court have held that reasonableness is essential to the validity of an exercise of police power affecting the general rights of the land owner by restricting the character of the owner's use, which would include the opportunity to repair unsafe structures. The right asserted by plaintiffs, then, cannot be considered fundamental. Therefore, to demonstrate a violation on substantive due process grounds, plaintiffs have the burden of showing that the unreasonable-to-repair presumption set forth in BCO § 18–59 does not bear any reasonable relationship to a legitimate governmental interest.

*Id.* at 228–29.

The *Bonner* Court went on:

> In our view, however, if permitting demolition of unsafe structures (notwithstanding the willingness and financial ability of property owners to undertake corrective repairs) is not unconstitutional in itself, it does not become so simply because it is shown to be less desirable than some other action. While affording a property owner the opportunity to perform corrective repairs is one method by which the dangers posed by an unsafe structure may be remedied, it is by no means the only method—much less the only constitutional method—of doing so. As long as certain minimum standards have been met, and the ordinance does not encroach upon a property owner's fundamental rights, the decision to exceed those standards by providing a property owner with an automatic right of repair, as some municipalities have chosen to do, is a policy judgment, not a constitutional mandate.

*Id.* at 230.

Judge Opperman then reasoned that there was insufficient evidence that Mr. Sapelak was motivated by arbitrary animus towards Plaintiff to make the demolition order unreasonable.

In its objections, Plaintiff attempts to distinguish *Bonner* by asserting that it involved a facial challenge to the ordinance, not an as-applied challenge.[3] Plaintiff further objects that "there was no proof offered at trial, nor was adequate legal authority shown, to the effect that, the Defendant's actions were legitimate and that they bore a reasonable relationship to protect the health and welfare of the citizens of Milford." Objs. at 11. Plaintiff reasons that, because the building had been vacated, no citizen was in any danger and thus the demolition had no reasonable relationship to a legitimate government purpose.

To prove a substantive due process violation, plaintiffs must identify "(1) official acts that are unreasonable and arbitrary and 'may not take place no matter what procedural protections accompany them,' [or] (2) official conduct that 'shocks the conscience.'" *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994). "[N]o court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety." *Id.*

Plaintiff admits that the structure was a "dangerous building" pursuant to the ordinance in December 2008. Likewise, Plaintiff does not argue that Defendants misapplied the ordinance or that the ordinance, on its face, is constitutionally deficient. Plaintiff's only argument is that Defendant's refusal to give Plaintiff an opportunity to, once again, repair the structure violates substantive due process. That argument is without merit.

As the *Bonner* Court stated, the government has a legitimate government interest in condemning buildings that are a nuisance or constitute a threat to public health or safety. Plaintiff

---

[3] This distinction is irrelevant for present purposes. For the most part, the same arguments which Plaintiff makes were considered and expressly rejected by the *Bonner* Court. To the extent Plaintiff argues that factual circumstances of Defendant's refusal to allow an opportunity to repair distinguishes this case from *Bonner*, that argument is addressed and rejected below.

does not contest that, in the abstract, demolition is a permissible way of resolving the threat to public safety which unsafe buildings pose. The mere fact that an alternative to demolition existed is irrelevant, even if that alternative was arguably preferable. As the *Bonner* Court explained:

> Nor is the ordinance unreasonable merely because there exists an arguably preferred method of addressing the legislative objective sought to be attained, or because the prohibited land use is just as reasonable as the one permitted or required under the ordinance. Certainly, a variety of permissible land uses may be excluded or restricted by local ordinance provided the ordinance is reasonable, and we do not concern ourselves with the wisdom or desirability of such legislation. Furthermore, even if the relationship between BCO § 18–59 and the City's interest in promoting the public health, safety, and welfare is debatable, we need more than a mere difference of opinion to establish a substantive due process violation, and plaintiffs have failed to make such a showing.

495 Mich. at 234.

Dangerous buildings pose a threat to the public health and welfare. Municipalities are justified in condemning and demolishing such buildings to eliminate that threat. There is no allegation here that Defendant's decision to demolish the building was made in violation of the procedures set out in the relevant ordinance. Rather, Plaintiff asserts that there is no evidence "that any citizen's health and welfare was compromised by letting the Plaintiff repair the unoccupied building." Objs. at 11. But Plaintiff had a history of minimal repairs (or, at least, a history of making repairs which did not address the underlying cause of the bursting pipes and collapsing ceilings). For that reason, a reasonable observer could conclude that conditions in the building would likely degenerate again if Plaintiff was allowed to make superficial repairs and reopen the building.

Defendants could have chosen to give Plaintiff the benefit of the doubt and provide an opportunity to repair, but such optimism is not required by the Constitution. Rather, substantive due process is violated by official acts that are so unreasonable and arbitrary that no procedural protections could render them fair. Defendant's decision to end all future opportunities for the

public to be endangered by conditions within the structure was not arbitrary or unreasonable. *See Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (rejecting the argument that the defendants acted unreasonably and in bad faith by condemning the building because "[a]t most the proffered evidence pointed to a faulty decision made in haste"). The only evidence of arbitrariness, unreasonableness, or bad faith which Plaintiff has identified is that Defendant chose to demolish the building rather than allowing an opportunity to repair. Given the fact that Plaintiff had already been given multiple prior opportunities to repair the building and the underlying issues persisted, Defendant's decision to demolish the building without providing an opportunity to repair was not unreasonable.

Plaintiff also argues that, because the building sat vacant for several years after the demolition order, it must not have been as dangerous as Defendant asserts. This argument is likewise without merit. To begin with, the delay in demolishing the building seems almost entirely attributable to Plaintiff's actions. Immediately after the initial demolition order was issued, Plaintiff appealed to the Village Counsel. When that appeal failed, Plaintiff stopped making mortgage payments on the building. Within several months, foreclosure occurred. On the day of the foreclosure sale, Plaintiff commenced bankruptcy proceedings. Defendants can hardly be faulted for waiting to demolish the building until after Plaintiff's appeals had ended and the parties had agreed to lift the automatic stay. Additionally, Plaintiff's argument misconstrues the danger Defendant was seeking to protect the public from. In the past, Plaintiff had made minimal repairs to the building when pipes burst, yet the same conditions kept reoccurring because of the deficient boiler heating system. Defendant's condemnation and demolition order constituted a determination that, even if Plaintiff was allowed to repair, the situation would reoccur. Plaintiff argues that it could have repaired the building while it was vacant without endangering any

tenant. That is true, but Defendant reasonably concluded that there was an unacceptable risk of tenants being endangered once they moved back in.

Simply put, Defendant acted pursuant to the statute and chose one option, demolition, out of several constitutional alternatives. Plaintiff is understandably upset that the building was demolished, but given the history of issues with the building, Defendant's actions fall short of surpassing the high bar required to establish a violation of substantive due process. *See Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014).

**B.**

Judge Opperman rejected Plaintiff's inverse condemnation claim because "the Plaintiff has failed to present sufficient evidence that the Defendant 'abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property.'" Rep. & Rec. at 12.[4] Plaintiff objects to that finding: "The Defendant, for arbitrary reasons, chose to order a demolition of the building without an option to repair. That decision was arbitrary as indicated above. A vacant unoccupied building awaiting repair does not affect the health and welfare of citizens." Objs. at 16. Plaintiff's objections to Judge Opperman's analysis of his inverse condemnation claim are thus derivative of his objections to the analysis of the substantive due process claim. Because the Court has already concluded, after de novo review, that Defendant's actions were not arbitrary, this objection is likewise without merit.

**IV.**

Accordingly, it is **ORDERED** that Judge Opperman's Report and Recommendation, ECF No. 1, is **ADOPTED.**

---

[4] As Judge Opperman notes, a plaintiff bringing an inverse condemnation claim must show that the government "abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property." *Merkur Steel Supply Inc. v. City of Detroit*, 261 Mich. App. 116, 130, 680 N.W.2d 485, 495 (2004). As discussed above, Defendant acted within the bounds of the ordinance that authorizes the Village of Milford to condemn and demolish buildings. Defendant thus acted within its legitimate powers.

It is further **ORDERED** that Plaintiff's Objections, ECF No. 3, are **OVERRULED.**

It is further **ORDERED** that Judgment is entered in favor of Defendant.

It is further **ORDERED** that Plaintiff's Complaint, ECF No. 1, Docket No. 11-02169-dob, is **DISMISSED.**

Dated: March 24, 2017                                    s/Thomas L. Ludington
                                                        THOMAS L. LUDINGTON
                                                        United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 24, 2017.

                                    s/Michael A. Sian
                                    MICHAEL A. SIAN, Case Manager